2d 365, 107 S. Ct. 1831 (1987); and <u>Curtis v. Loether</u>, 415 U.S. 189, 196, 39 L. Ed. 2d 260, 94 S. Ct. 1005 (1974).

"Because legal relief is available and legal rights are asserted, we conclude that...[the] action is an action at law." See 42 U.S.C.S. § 1983; <u>Lorillard</u>, 434 U.S. at 583. "Thus Plaintiff is entitled to have a jury try its claim."

Defendants have constructive and/or actual possession, or are responsible for destroying, Plaintiff's signed negotiable instruments and chattel paper. Defendants have refused to tender the documents despite repeated demands. Defendants are liable to Plaintiff for the full face value of the negotiable instruments which is $8,716,200.00.

## VIII.   CONSTRUCTIVE FRAUD

Plaintiff asserts that the Defendants committed Constructive Fraud in addition to all of the other alleged causes of action. All Defendants knew Plaintiff and even if Defendants argue their actual innocence, all Defendants were responsible for the daily operation, lending decisions, and employee oversight at NWCB. Constructive Fraud does not require an intent to deceive, but instead arises when a defendant breaches a legal or equitable duty.

To prevail on a claim of constructive fraud a plaintiff must prove that: (1) the defendants had a fiduciary or confidential relationship with the plaintiff that gave rise to a legal or equitable duty; (2) the defendants breached that duty; (3) the breach tends to deceive others, violates public or private

41

confidences, or injures public interests; and (4) the breach induced detrimental and justifiable reliance.

Most importantly for constructive fraud is that no showing of intent to deceive or dishonesty of purpose is required. Conduct that is not actually fraudulent but has all the actual consequences and legal effects of actual fraud is constructive fraud. All Defendants are guilty.

Breach of a legal or equitable duty, irrespective of moral guilt, is "fraudulent because of its tendency to deceive others or violate confidence." Courts have consistently defined constructive fraud as failure to perform an obligation, not by an honest mistake, but by some "interested or sinister motive." See Green v. McAllister, 103 Wn. App. 452, 14 P. 3d 795, 804 (Wash. Ct. App. 2000).

The Washington State Supreme Court has stated that untrue statements could amount to constructive fraud, even if they were made in good faith. See Thompson v. Huston, 17 Wn. 2d 457, 135 P. 2d 834, 836 (Wash. 1943)

Plaintiff avers that: (1) As Plaintiff's bankers the Defendants had either a fiduciary duty or confidential relationship with Plaintiff, or both. (2) Based on Defendant Goodell's conviction and all of the evidence contained in this complaint, Plaintiff asserts that Defendants breached their fiduciary duty and /or confidential duties to Plaintiff. (3) Defendant's breach of duty and fraud violated many of its customers interests, enough to qualify as public, and violated the private confiden-

ces of the Plaintiff and other NWCB customers.  (4) Defendant's breach and fraud induced Plaintiff to make decisions as if he had credit line funding which was both justified based on the assurances and documentation provided by Defendants and ultimately to Plaintiff's detriment.

Plaintiff has met all of the standards for the tests provided to meet the elements of  Constructive Fraud.

### XI.    FRAUD IN THE EXECUTION

Plaintiff alleges that all Defendants are guilty of Fraud in the Execution.  Defendants have maintained, subsequent to Jeffrey Goodell's conviction, that the  credit line  transaction was fraudulently created by Mr. Goodell.  If this is true then Plaintiff was induced to execute a contract that was materially different in appearance than what was occurring in reality according to the Defendants.  At all times during the period of inducement, execution and acceptance of consideration by Plaintiff, Defendant Goodell was an agent and employee of the Defendants and in good standing at NWCB.  Defendant Goodell was seen by Plaintiff in the company of both Kurt Graff and Cliff Rubert in the bank on a regular basis.

The Ninth circuit  has found that fraud in  the execution may "duplicate a contract claim by alleging misrepresentation about the characteristics...that are the subject of the contract." See Giles v. GMAC, 494 F. 3d  865, 880 (9th Cir. 2007).

Fraud in the execution is any "misrepresentation that deceives  the other party as to the nature of a document evidencing the contract."  Black's Law Dictionary, 6th Ed. pg 661

"Fraud in the Execution," involves a misrepresentation that "induces a party to believe the nature of his act is something entirely different than is actually is."  See <u>Southwest Admin. Inc. v. Rozay's Transfer</u>, 791 F. 2d 769, 774 (9th Cir. 1986).

The fraud based nature and breach of fiduciary duty contained in the  details of Defendant Goodell's conviction more than evidence Fraud in the Execution.  Plaintiff believed in good faith he was executing a valid credit line transaction for business purposes and did not know that any misrepresentations were being made by the Defendants.

Defendants were all guilty of fraud in the execution by causing Plaintiff to "sign a document reasonably believeing it is something quite different than it is."  <u>Operating Engineers Pension Trust Fund v. Gilliam</u>, 737 F. 2d 1501, 1504 (9th Cir. 1984); and <u>Hetchkop v. Woodlawn at Grassmere, Inc.</u>, 116 F. 3d 28, 32 (2nd Cir. 1997).  This type of fraud "goes to the nature of  the instrument itself." See <u>Pedersen v. Bibioff</u>, Wn. App. 710, 828 P. 2d 1113, 1119 (Wash. Ct. App. 1992).

Claims for fraud in the execution have five elements.  (1) a misrepresentation of a material fact; (2) knowledge of the falsity of the representation; (3) an  intention on part of the defendant to induce reliance by the plaintiff; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) an injury suffered by the plaintiff as  a result from such reliance.

All five elements of Fraud in the Execution have been set forth  in this complaint and Defendants are liable.  "Fraud in

44

the execution of the contract as a whole  and fraud in the indu-

cement...are issues to be resolved by the courts." See <u>Three</u>

<u>Valleys Mun. Wtr. Dist. v. E.F. Hutton & Co., Inc.</u>, 925 F. 2d

1136, 1140-41 (9th Cir. 1991).

## X.   FRAUD IN THE INDUCEMENT

Plaintiff alleges that if the Defendants assertions that

their bank was somehow unable to provide  for Plaintiff's credit

line transaction due to lending limits or other criteria, and

that Jeffrey Goodell was a rogue agent, the Defendants are ALL

still guilty of fraud in the inducement for causing Plaintiff to

enter into a contract that their bank either did not have the

ability to complete, or for negligently failing to supervise and

scrutinize the lending activities of their employees that were

going on literally within arms reach.

To establish fraud in the inducement a plaintiff must show

that:  (1) a false representation was made by the defendant, (2)

the defendant's knowledge or belief that the representation was

false (or that it had an insufficient basis for making the rep-

resentation), (3) the defendant's intention to therewith induce

the plaintiff to consent to the contract's formation, (4) the

plaintiff's justifiable reliance upon the misrepresentation, and

(5) damage to the plaintiff resulting from such reliance.  See

<u>U.S. ex rel Hendow v. Univ. of Phoenix</u>, 461 F. 3d 1166, 1173 (9th

Cir. 2006); and <u>Cooper v. Pickett</u>, 137 F. 3d 616, 627 (9th Cir.

1998).

Fraud in the inducement is fraud connected with the under-

45

lying transaction and not with the nature of the contract or document signed.  Misrepresentation as to the terms, quality, or other aspects  of a contractual relation, venture or other trans-actions that leads a person to agree to enter into the transact-ion with a false impression or understanding of the risks involved, or duties and obligations he has undertaken.  Black's Law Dictionary, 6th Ed. pg 661.

"The essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." Block v. Neal, 460 U.S. 289, 296,  75 L. Ed. 2d 67,  103 S. Ct. 1089 (1983).

The injuries claimed are entirely the result of Defendants fraud and ""...a claim such as fraud in the inducement would lie within the jurisdiction of the district court." See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S. Ct. 1204, 1209,  163 L. Ed. 2d 1038 (2006).

In order to determine whether Defendants committed a fraud or fraud in the inducement, a court would necessarily need to determine whether the written and oral statements were misleading to plaintiff. See West Coast, Inc. v. Snohomish Cnty., 112 Wn. App. 200,  48 P. 3d  997, 1000 (Wash. App. 2002); and Pedersen v. Bibioff, 64 Wn. App. 710, 828 P. 2d 1113, 1120 (Wash. App. 1992) ("Fraud in the inducement...is fraud which induces the transaction by misrepresentation...").

Plaintiff must "state the  time, place, and specific content of the false representations as well as identies of the parties

to the misrepresentation." See Edwards v. Marin Park, Inc., 356
F. 3d 1058, 1066 (9th Cir. 2004) (quoting Alan Neuman Prods., Inc.
v. Albright, 862 F. 2d 1388, 1392-93 (9th Cir. 1988).

Plaintiff's specifics are laid out completely in the state-
ment of facts contained herein and is supported by all of the
attached exhibits.  Defendants are guilty of Fraud in the Induce-
ment.

### XI.   FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

Plaintiff avers that all of the Defendants are guilty of
Fraudulent Concealment in many of the aspects of the credit line
transaction and facts surrounding Jeffrey Goodell's criminal
conviction and the subsequent  sale of NWCB to Heritage Financial
Corporation.  Plaintiff asserts specifically that the signed cop-
ies of  the loan documents are being concealed by the Defendants.
Plaintiff asserts that he is entitled to equitable tolling on
all causes of action not only due to the sentencing date factor
pursuant to his civil RICO claim but also due to the Defendant's
fraudulent concealment of evidence in this case.

Plaintiff asserts that fraudulent concealment is a rebuttal
to any statute of limitations defense and an affirmative basis
for relief and courts have consistantly agreed.  See Community
Cause v. Boatwright, 124 Cal. App. 3d 888, 177, Cal Rptr. 657
(Cal. Ct. App. 1981); and Marketing West, Inc. v. Sanyo Fisher
(USA) Corp., 6 Cal. App. 4th 603, 612-13, 7 Cal. Rptr. 2d 859.

A fraud by ommission or fraud by concealment claim "can
succeed without the same level of specificity required by a

normal fraud claim." See Washington v. Baenziger, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).

The Ninth Circuit has recognized that "equitable tolling doctrines, such as fraudulent concealment, apply in civil RICO cases." See Pincay v. Andrews, 238 F. 3d 1106, 1108 (9th Cir. 2001).  Plaintiff asserts that Defendants continued obfuscation of the signed loan documents constitutes an ongoing fraudulent concealment and that even absent any equitable tolling Plaintiff is still well within the six year statute of limitations for a breach of contract.

Plaintiff asserts that all of his causes of action should be considered equitably tolled and that Defendants be compelled by the court to produce the signed copies of the loan documents for inspection.  Defendant's issuance of cashier's checks more than evidences that a contract was in force.  Signed copies of them exist by Defendant Goodell's admission and Plaintiff has presented unsigned loan documents sent from a bank email as exhibits to this complaint.  Signed loan documents exist and are in the Defendants possession, or have been destroyed in furtherance of the Defendants ongoing and malicious fraudulent concealment.

To plead fraudulent concealment a plaintiff must allege that:  (1) the defendants took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim" as a result of defendant's affirmative acts; and (3) the plaintiff acted

diligently in trying to uncover  the facts giving rise to its

claim.  See Hexcel Corp. v. Ineos Polymers, Inc., 681 F. 3d 1055,

1060 (9th Cir. 2012);  Conmar v. Mitsui & Co. (USA), Inc., 858

F. 2d 499, 502 (9th Cir. 1988);  Beneficial Standard Life Ins.

Co. V. Madariaga, 851 F. 2d 271, 274-75 (9th Cir. 1988); and

Rutledge v. Boston Woven Hose & Rubber Co., 576 F. 2d 248, 249,

250 (9th Cir. 1978).

Equitable tolling requires that a plaintiff show that: (1)

the defendants wrongfully concealed material facts relating to

defendant's wrongdoing; (2) the concealment prevented plaintiff's

discovery of the nature of the claim within the limitations

period; and (3) the plaintiff exercised due diligence in pursuing

the discovery of the claim during the period plaintiff seeks to

have tolled.  See Rotella v. Wood, 528 U.S. 549, 561,  120 S. Ct.

1075,  145 L. Ed. 1047 (2000).

Equitable tolling allows a plaintiff to overcome an expired

statute of limitations when they were induced by fraud, misrep-

resentation, or deception to refrain from timely commencing an

action.  See M&T Mortgage Corp. v. White, 736 F. Supp. 2d 538,

555 (E.D. NY 2010).

Plaintiff brought suit within the statute of limitations as

he believed that he genuinely had a written, accepted contract

for which NWCB had given cashier's checks as consideration.

Plaintiff spent several years attempting to garner licensed

counsel to prosecute his claim but was without funds or liquidity

with which to pay an attorney due in large part to the Defendant's

49

fraud.   Plaintiff was diligent to the best of his ability in pursuing his claims and at  no time did Plaintiff  lack continued and diligent pursuit of his claims of injury by the Defendants.

"When external forces, rather than a plaintiff's lack of diligence account for failure to file a timely claim, equitable tolling of the  statute of limitations may be appropriate." See Miles v. Prunty, 187 F. 3d 1104, 1107 (9th Cir. 1999); and Bryant v. Arizona Atty General, 499 F. 3d  1056, 1061 (9th Cir. 2007).

In Washington State, courts permit equitable tolling "when justice permits"  See Millay v. Cam, 135 Wash. 2d 193, 206,  955 P. 2d 791 (1998).  "Equitable tolling  generally depends on matters outside of the pleadings."  See Huynh v. Chase Manhattan Bank, 465 F. 3d 992, 1003-1004 (9th Cir. 2006).

Plaintiff is entitled to a claim for Fraudulent Concealment and for equitable tolling of all of the statutes of limitations on all causes of actions based on all of the facts alleged in this this Verified Complaint  and attached exhibits.

XII.   GROSS NEGLIGENCE

Plaintiff asserts that all Defendants are guilty of Gross Negligence and fraud in either the inducement of execution of the contractual relationship and/or in the responsible oversight and supervision of the bank's agents and employees and their criminally fraudulent actions.

All Defendants acted negligently under RCW 23B.08.420 and the Financial Institutions, Reform, Recovery and Enforcement Act

50

of 1989 and the officers and/or directors  breached their fiduc-
iary duties.  Defendant's poor judgment and lack of oversight
proximately caused the Plaintiff's inducement to contract and
subsequent harm by Defendant's fraud and misrepresentations.

Plaintiff complied with all of the Defendant's documentation
requests and had no reason to believe he was being mislead.
Defendants did not act in good faith or exercise reasonable care.
Reasonable care requires "a director [to] act with such care as
a reasonably prudent person in a like position would use under
similar circumstances."  See Riss v. Angel, 131 Wn. 2d 612, 633,
934 P. 2d 669 (Wash. 1997) (en banc); See also Shinn v. Thrust
IV, Inc., 56 Wn. App. 827, 834, 786 P. 2d 285 (Wash. Ct. App.
1990).

Defendants do not have any protection under Washington's
business judgment rule as it is unreasonable to attribute good
faith and reasonable care to men who sat thirty feet away while
their direct employee, whom they lunched with, forged copius
documents and negotiated client transactions that were supposedly
"unknown" or "not authorized".

"The business judgment rule does not appear to protect a
defendant's conduct in Washington if the defendant did not exer-
cise proper care, skill, and diligence." Id.  No formulation of
the business judgment rule protects Defendants from claims of
Gross Negligence.  See FDIC v. McSweeney, 976 F. 2d 532, 539-40
(9th  Cir. 1992); and Montclair United Soccer Club v. Count Me
In Corp., Lexis 65919 (W.D. Wash. 2010).

51

1991);  Kloepfel v. Bokor, 149 Wn. 2d 192,  66 P. 3d 630, 632

(Wash. 2003;  Reid v. Pierce Cnty., 136 Wash. 2d 192, 202,  261

P. 2d 333 (Wash. 1998).

"Where reasonable persons may differ, the trier of fact is

to determine whether the conduct has been sufficiently extreme

and outrageous to result in liability."  See Tekle v. U.S., 511

F. 3d 839, 856 (9th Cir. 2007).  The question of whether a def-

endant's conduct was sufficiently outrageous is normally left to

a jury.  See Dicomes v. State, 113 Wash. 2d 612, 630,  782 P. 2d

1002 (Wash.1989);  Sutton v. Tacoma Sch. Dist. No. 10, 180 Wn.

App. 859,  324 P. 3d 763, 769 (Wash. Ct. App. 2014).

Defendants knew or should have known that there was a "high

probability" that their conduct would cause severe emotional dis-

tress and nonetheless proceeded in "conscious disregard" of it.

See Phillips v. Hardwick, 29 Wash. App. 382, 388,  628 P. 2d 506

(Wash. Ct. App. 1981).  Factors used to determine the severity

of the Defendant's conduct may include the position held by the

Defendants and the callous disregard with which the Defendants

committed their criminal acts.

Defendants caused irreparable harm to Plaintiff with their

wanton and malfeasantly reckless actions and must be held finan-

cially accountable and liable to Plaintiff for those harms.  See

Vawter v. Quality Loan Service Corp. of WA, 707 F. Supp. 2d 1115,

1128 (W.D. Wash. 2010).

Defendants abuse could not have been anything other than

intentional.

1   "To secure the protection of the business judgment rule,

2   '[g]ood faith is insufficient because a director must also act

3   with such care as a reasonably prudent person in a like position

4   would use under similar circumstances." See Riss, 934 P. 2d at

5   681.

6      "Directors are not immunized from liability when they fail

7   to exercise proper care, skill, and diligence." See Fielder v.

8   Sterling Park Homeowners Ass'n, 914  F. Supp. 2d 1222 (W.D. Wash.

9   2012).

10     Defendants did not exercise proper care, skill, diligence,

11   duty, responsibility, or managerial supervision of their instit-

12   ution and  Plaintiff was harmed by their Gross Negligence.

13   XIII.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

14     In addition to any emotional distress caused by the Defen-

15   dant's negligent and malicious actions Plaintiff alleges that if

16   Defendants had the requisite criminal intent to warrant a confe-

17   ssion and conviction, their actions also had the malum in se

18   intent to warrant financial responsibility for the Intentional

19   Infliction of Emotional Distress suffered by the Plaintiff due

20   to the Defendant's fraud.

21     Plaintiff suffered extreme emotional distress as a result of

22   Defendants outrageously fraudulent conduct and reckless disregard

23   for the consequences of their actions.  Defendants actions clear-

24   ly exceeded all bounds of that which usually is tolerated in

25   civilized society or criminal charges would never have been

    issued.  See Schneider v. TRW, Inc., 938 F. 2d 986, 992 (9th Cir.

XVI.  MATERIALLY FRAUDULENT MISREPRESENTATION

Plaintiff initially believed that the representations made by NWCB and its agents to be true and Plaintiff relied on these representations to his ultimate financial detriment.  By Defendant's own admission the representations of NWCB and its agents have been determined to be criminally false.

In order to establish a misrepresentation claim a plaintiff must demonstrate:  (1) the defendant(s) made a misrepresentation about a fact  in existance, (2) that was either fraudulent or material, (3) which induced plaintiff to act on the misrepresentation, and (4) that plaintiff was justified in relying on defendant's misrepresentations.  See Addisu v. Fred Meyer, Inc., 198 F. 3d 1130, 1137 (9th Cir. 2000) (adopting the Restatement (Second) of Contracts definition for Misrepresentation).

"A misrepresentation is an assertion that is not in accord with the facts" as they exist at the time the assertion is made. "Such facts include past events as well as present circumstances but do not include future events.  An assertion limited to future events...may be a basis of liability for breach of contract, but not of relief for misrepresentation."  See Restatement (Second) of Contracts § 159 cmt. c.

"An assertion need not be fraudulent to be a misrepresentation" so long as "it is material" Id § 159 cmt. a; cf.  See also Reliance Financial Corp. v. Miller, 557 F. 2d 674, 680 (9th Cir. 1977).  By the Defendant's own admissions, and the criminal conviction associated with this case, the requirements of (1)

53

and (2) have been met.

That Plaintiff was induced to act was evidenced by the chain of emails, letters and text messages and Plaintiff's entering into the gemstone purchase and providing documentation to NWCB to secure a line of credit. Accordingly (3) is satisfied.

NWCB was Plaintiff's primary financing institution and the Defendants had completed numerous transactions for Plaintiff & Plaintiff's associated companies. Defendants held Plaintiff's existing checking, savings and lines of credit accounts. Plaintiff was more than justified in relying on Defendant's assurances and misrepresentations and had no reason to distrust Defendants at the time of the contemplated transaction. Requirement (4) is met.

Plaintiff's claim is both valid and substantiated and is not time barred due to the associated civil RICO claim.

Defendant's materially fraudulent misrepresentations were the reason that Plaintiff engaged in the acquisition of the gemstone assets, and did not engage the sale of substantial real property assets. Defendant's fraud caused an irreparable harm to Plaintiff.

XV.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Due to Defendants actions Plaintiff suffered the loss of his business, his reputation, his family, and his mental health suffered to the point of having to obtain professional therapy. Defendants caused Plaintiff immense suffering and significantly grevious harm and are guilty of the Negligent Infliction of

54

1   Emotional Distress.

2       Negligent Infliction of Emotional Distress can be divided

3   into two causes of action:  (1) direct action, and (2) actions

4   brought by bystanders who experience distress as a result of in-

5   jury to others.  Plaintiff alleges theory (1) based on the direct

6   actions of the Defendants.  See <u>Bishop v. State</u>, 77 Wash. App.

7   228, 233 n.4,  889 P. 2d 959 (Wash. Ct. App. 1995)

8       Defendants owed a duty to Plaintiff and should have foresee-

9   ably known that their fraudulent conduct, or willful ignorance

10  thereof, endangered the interests of their clients and placed

11  Plaintiff in an unreasonable circumstance.  See <u>Snyder v. Medical</u>

12  <u>Services Corp. of E. Wash.</u>, 145 Wash. 2d 233, 243,  35 P. 3d

13  1158 (Wash. 2001).

14      There was no utility in Defendant's conduct, only risk, and

15  accordingly was unreasonably dangerous.  Plaintiff's distress

16  was caused directly by his inability to meet his financial obli-

17  gations which was directly caused by Defendant's actions.  See

18  Strong v. Terrell, 147 Wash. App. 376, 387,  195 P. 3d 977 (Wash.

19  2008).

20      Plaintiff incurred expenses for medical treatment and was

21  diagnosed by mental health specialists having never had any iss-

22  ues prior to his transaction with the Defendants.  Plaintiff has

23  suffered emotional distress that has been observed with objective

24  symptomology and documented by medical evidence.  See <u>Hegel v.</u>

25  <u>McMahon</u>, 136 Wash. 2d 122, 135,  960 P. 2d 424 (Wash. 1998).

    Plaintiff is entitled to recover for the negligent

infliction of emotional distress because the Defendants collect-ive conduct was so egregeous that it rose to criminal sanction. The harm caused to Plaintiff was within the scope of foreseeable harm of the negligent conduct, a reasonable reaction given the circumstances, and manifest by objective symptomology.  A man who cannot meet his obligations or support his family due to anothers violation of duty, trust, and contractual obligation is not unreasonable in having a stress collapse, panic attack or severe depression as a result of that harm.  See Schmidt v. Coogan, 181 Wn. 2d 661,  335 P. 3d 424, 430 (Wash. 2014);  Kumar v. Gate Gourmet, Inc., 180 Wn. @d 481,  325 P. 3d 193, 205 (Wash. Ct. App. 2014);  Simpson v. Martin, Ryan, Andrada & Lifter, Lexis 23342 (N.D. Cal. 1997).

## XVI.   NEGLIGENT MISREPRESENTATION

Plaintiff alleges Negligent Misrepresentation in the most fraudulent of extremes.  To state a negligent misrepresentation claim a plaintiff must allege:  (1) the defendant provided false information for plaintiff's guidance in a business transaction; (2) the defendant knew or should have known that the information was supplied to guide plaintiff in that business transaction; (3) defendant was negligent in obtaining or communicating the false information; (4) plaintiff relied on defendant's false information; (5) plaintiff's reliance was reasonable; and (6) the false information was the proximate cause of plaintiff's damages.  See Ross v. Kirner, 162 Wn. 2d 493, 499,  172 P. 3d 701 (Wash. 2007); (citing Laywers Title Ins. Corp. v. Baik, 147

Wn. 2d 536, 545,  55 P. 3d 619 (Wash. 2002)).

Defendant Goodell's criminal conviction meets all of the tests presented and taints all of the Defendants.  Plaintiff asserts that Plaintiff relied on the Defendants statements to his ultimate harm.  All Defendants are responsible either direct-ly, by conspiracy, or under RICO or Respondeat Superior.

In the Ninth Circuit the circumstances constituting neglig-ent misrepresentation must be stated with particularity and Plaintiff has laid out the specifics of time, place, content, and identies in the statement of facts and identified parties. See Brophy v. JP Morgan Chase Bank Nat'l Ass'n, Lexis 171611 (E.D. Wash. 2013); and Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc., 806 F. 2d 1393, 1401 (9th Cir. 1986).

The clear, cogent and convincing evidence was enough to obtain a criminal conviction in matters relating directly to the banking practices occurring at NWCB.  the Defendants supplied false information with the express purpose of guiding Plaintiff's business decisions.  The false and damaging assurances of the Defendants were the proximate cause of all claimed damages in this action.  See Baddeley v. Seek, 138 Wn. App. 333, 339-340, 156 P. 3d 959 (Wash. 2007).

Defendants had a duty to disclose any information that would affect Plaintiff's business as Defendants were culpable for in-ducing Plaintiff to contract in the first place.  Defendants obfuscated and/or omitted information regarding the funding of the credit line transaction and the associated documentation and

senior Defendants never contacted Plaintiff to warn Plaintiff of

Goodell's actions even after Defendant Goodell was terminated

for fraud.   Cliff Rubert and Kurt Graff opted instead for silence

and allowed Plaintiff to continue on believing that Defendant

Goodell had simply changed banks as he had when he transitioned

from Frontier Bank to NWCB.  The senior Defendants refusal to

warn NWCB clients about Goodell's fraud places responsibility

for his actions even more heavily on their shoulders and that of

their institution.  An ommission is actionable if there is a

duty to disclose.  Rubert and Graff had just such a duty.   In

such instances "the supression of a material fact is tantamount

to an affirmative misrepresentation."  See Alexander v. Sanford,

181 Wn. App. 135, 177,  325 P. 3d 341 (Wash. 2014).

In Washington, a duty to disclose arises where there is a

quasi-fiduciary relationship, where a special relationship has

been developed between the parties, where one party is relying

upon the superior specialized knowledge and experience of the

other.

As Plaintiff's bankers just such a relationship and duty

was manifest and Plaintiff relied on Defendants to his harm.

Defendants are liable and should be held accountable in a vindi-

ctively extreme and punitive manner.

### XVII.   NEGLIGENCE PER SE

Plaintiff asserts and alleges that all Defendants are guil-

ty of Negligence Per Se for harms arising out of their contract-

ual relationship and their breach thereof.

1    A claim for negligence per se must establish duty, breach,

2  proximate causation and damages.  See <u>Gall v. Mcdonald Indus.</u>,

3  84 Wn. App. 194, 202 (Wash. 1996); <u>Iwai v. State</u>, 129 Wn. 2d 84,

4  96,  915 P. 2d 1089 (Wash. 1996); <u>Amtruck Factors v. Int'l For-</u>

5  <u>est Products</u>, 59 Wn. App. 8, 795 P. 2d 742 (Wash. 1990).

6    Plaintiff and Defendants had an ongoing banking relation-

7  ship and a relationship arising out of a specific contract.

8  Defendants owed Plaintiff a fiduciary duty and standard of care

9  independant of the contract in question as they had all of Plain-

10  tiff's banking business and were actively engaged in inducing

11  Plaintiff to contract and continue business relations with NWCB.

12    The Plaintiff had a private banking relationship with NWCB

13  and had been induced to follow Jeffrey Goodell and away from

14  Frontier Bank when Mr. Goodell changed his employment.  Defendant

15  Goodell had a relationship with Plaintiff as Plaintiff's personal

16  banker and as such had a heightened duty of care.  See <u>Baldin v.</u>

17  <u>Wells Fargo Bank N.A.</u>, Lexis 172776 (U.S. Dist. Ct. D. OR 2013)

18    All Defendants are guilty of negligence per se either dir-

19  ectly or through Respondeat Superior.

XVIII.  PROMISSORY FRAUD

20    Plaintiff alleges that all Defendants are guilty of having

21  committed Promissory Fraud.  An action for promissory fraud may

22  lie where a defendant fraudulently induces a plaintiff to enter

23  into a contract.  In such cases, the plaintiff's claim does not

24  depend upon whether the defendant's promise is ultimately enfor-

25  cable as a contract.  If it is enforcable, "the plaintiff has a

59

cause of action in tort as an alternative at least, and...in addition to his cause of action on the contract..." "For example, when one party commits a fraud during a contract formation or performance, the injured party may recover in contract AND in tort." See Harris v. Atlantic Richfield Co., 4th 70, 78, 17 Cal.Rptr. 2d 649 (1993).

Promissory fraud is actionable as a type of intentional misrepresentation which provides that a promise made without any intention of performing it may constitute a fraud.

The elements of promissory fraud are: (1) a misrepresentation; (2) a false representation, concealment or non-disclosure; (3) intent to defraud or induce reliance; (4) justifiable reliance; (5)resulting damage.

For all of the reasons enumerated in the common law fraud, civil RICO, and constructive fraud sections of this complaint, Plaintiff has more than met the burden of Promissory Fraud and all defendants must be held accountable.

IXX.   RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT

CIVIL RICO PURSUANT TO 18 U.S.C.S § 1964(c)

Plaintiff asserts that Defendants are fully liable for damages under 18 U.S.C.S. § 1964(c).  The language under 18 U.S.C.S. § 1964(c) states:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 U.S.C.S. § 1962] may sue therefore in any appropriate United States District Court and shall recover three fold the damages he sustains and the cost of the suit, including a reasonable

60

1  attorney's fee, except that no person may rely upon any conduct
2  that would have been actionable as fraud in the purchase or sale
3  of securities to establish a violation of section 1962 [18 U.S.
4  C.S. § 1962].   The exception contained in the preceeding sentence
5  does not apply to an action against any person that is criminally
6  convicted in connection with the fraud, in which case the stat-
7  ute of limitations shall start to run on the date on which the
8  conviction becomes final."

9      Under both RICO and Respondeat Superior all Defendants are
10  liable as all were aware of the unethical and ultimately illegal
11  activity occurring at Defendant's bank.   All Defendants were
12  jointly and severally liable and morally responsible.   Amongst
13  the Defendants so far only Jeffrey Goodell was charged and con-
14  victed with the crime of Felony Bank Fraud, 18 U.S.C.S. § 1344,
   and was sentenced to a term in Federal prison on 2013-02-25.

15      The six year statute of limitations for Breach of Contract
16  in Washington State did not begin to run until 2013-02-25.   All
17  other causes of action are similarly empowered and also tolled
18  pursuant to the Defendants fraudulent concealment.

19      Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct.
20  3275, 87 L. Ed. 2d 346 (1985) sets forth the elements necessary
21  for a civil RICO claim.   The Supreme Court stated:

22      "A private civil action under 18 U.S.C.S. § 1964(c), which
23  authorizes recovery of treble damages by any person injured in
24  his business or property by reason of a violation of the substan-
25  tive provisions of the Racketeer Influenced and Corrupt Organ-

1   izations Act (RICO) (18 U.S.C.S. §§ 1961-1968), <u>does not require</u>

2   the defendant's prior conviction of a RICO violation, or of the

3   underlying predicate offenses."

4   "...(RICO) (18 U.S.C.S. §§ 1961-1968), <u>does not require</u>

5   that the plaintiff establish a racketeering injury distinct from

6   that occurring as a result of the predicate acts themselves."

7   "The Racketeer Influenced and Corrupt Organizations Act

8   (18 U.S.C.S. §§ 1961-1968) is to be read broadly not only because

9   of Congress' expansive language and overall approach, but also

10  because of its express admonition that the Act is to be liberally

11  construed to effectuate its remedial purposes."

12  "The language of RICO gives no obvious indication that a

13  civil action can proceed only after a criminal conviction.   The

14  word "conviction" does not appear in any relevant portion of the

15  statute.   See §§ 1961, 1962, 1964(c).   To the contrary, the pre-

16  dicate acts involve conduct that is "chargable" or "indictable",

17  and "offense[s]" that are "punishable", under various criminal

    statutes."

18  A RICO action affects all Defendants due to the conspirator-

19  ial nature involved and Defendant Goodell has been convicted of

20  Bank Fraud pursuant to 18 U.S.C.S. § 1344 which is listed as a

21  predicate offense under the RICO statutes.

22  The senior Defendants were all well aware of Goodell's act-

23  ions on behalf of NWCB and were aware that Plaintiff was a client

24  of their bank.   All defendants had extensive meetings with, and

25  lunched with, Plaintiff to discuss many of Plaintiff's banking

62

transactions at NWCB.

NWCB and its agents induced Plaintiff to do business with NWCB on the credit line now in dispute by providing documentation, now espoused by them to be false, that purported to evidence a completed transaction involving gemstone lending at NWCB. See Exhibit C Pages 1-6.

Based on this "falsified" evidence Plaintiff entered into an agreement to purchase the emerald gemstone collateral and made contractual arrangements with the previous owners of the gemstones, which through Defendant's fraud and misrepresentation Plaintiff was unable to honor or complete. This caused Plaintiff the loss of his equity in the gemstone assets, opportunity loss on additional gemstone assets of which Plaintiff had an option, a lucrative business relationship, and the loss of several parcels of real property.

Plaintiff signed loan documents with NWCB and has emails and unsigned copies evidencing that NWCB created the documents. Plaintiff also has correspondance evidencing the fact that signed copies exist. Plaintiff also has cancelled checks evidencing consideration by NWCB. Plaintiff has offer, acceptance and consideration and the subsequent criminal conviction and evidence of fraud at NWCB by its employees more than qualifies Plaintiff's claim for civil RICO under 18 U.S.C.S. § 1964(c).

Plaintiff was not the only person harmed by NWCB and the multiple violations against varied customers constitutes a pattern of fraud. The essential elements of a civil RICO violation

under 18 U.S.C.S. § 1962(c) are: (1) conduct (2) of an enterprise (3) through a pattern (4) of raceteering activity." Sedima S.P. R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985); Miller v. Yokohama Tire Corp., 358 F. 3d 616, 620 (9th Cir 2004). "Racketeering activity" is defined in 18 U.S.C.S. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes listed in 18 U.S.C. S. § 1961(5), including 18 U.S.C.S. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C.S. § 1343, which makes wire fraud a crime." Schreiber Distrib. Co. v. Serv-Well Furn. Co., 806 F. 2d 1393, 1399 (9th Cir. 1986)). A "pattern of racketerring activity" means at least two acts of racketeering activity.

Defendant Goodell was convicted of 18 U.S.C.S. § 1344 and Exhibit HH Page 9 lists at least eighteen different victims/ borrowers/clients of NWCB that were lied to and abused by their banker at NWCB. The list of victims of the Defendants fraud was extensive and also included names not listed in the official documents such as another NWCB bank depositor Mr. Granville Brinkman. The list compiled by the state investigators was not complete by any means.

In Sedima S.P.R.L. v. Imrex Co., the Supreme Court laid out Plaintiff's claim:

"Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predi-cate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of these acts in

64

connection with the conduct of an enterprise."

"We are not at all convinced that the predicate acts must be established beyond a reasonable doubt in a proceeding under 1964(c).  In a number of settings, conduct that can be punished as criminal only upon proof beyond a reasonable doubt will support civil sanctions under a preponderance standard."  See United States v. One Assortment of 89 Firearms, 465 U.S. 354, 76 L. Ed. 2d 361,  104 S. Ct. 1099 (1984);  One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 235,  34 L. Ed. 2d 438, 93 S. Ct. 489 (1972);  Helvering v. Mitchell, 303 U.S. 391, 397 82 L. Ed. 917,  58 S. Ct. 630 (1938);  United States v. Regan, 232 U.S. 37, 47-49,  58 L. Ed. 494, 34 S. Ct. 213 (1914).

Plaintiff has met the burden and test for action under the civil RICO statutes but really didn't need to as the State of Washington, and subsequently the Federal Government had already made the case for him.  All Defendants are equally liable and Plaintiff is entitled to treble damages.

XX.   SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS
PURSUANT TO 42 U.S.C.S. § 1983

Plaintiff alleges that Defendants have withheld the signed copies of the loan documents in an attempt to deny Plaintiff access to legal redress in violation of the Fourth, Fifth, and Seventh Amendments to the United States Constitution.

Plaintiff alleges that the signed loan docuemnts are the property of the Plaintiff and, even if the documents could be construed to be the property of NWCB, the blue-ink original

65

signatures of the Plaintiff are the property of the Plaintiff and definately not the property of NWCB or the Defendants.

Plaintiff avers that he has a right to be secure in his papers and effects, a right to <u>not</u> be deprived of his property without consideration or compensation, and a right to due process and a jury trial in all civil matters in excess of twenty dollars. Plaintiff further alleges that the Defendants theft of Plaintiff's signature on the negotiable instruments and refusal to provide originals or copies of the contract have denied Plaintiff his constitutional amendment rights and have denied him both substantive and procedural due process.

Defendants are liable for punitive damages to Plaintiff. This action is not solely a breach of contract claim but also a case for tort among other remedies.  Punitive damages have an ancient provenance, The Supreme Court noted punitive-damages-like provisions in the Code of Hammurabi VI.  See <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 491,  128 S. Ct. 2605,  171 L. Ed. 2d 570 (2008) (quoting to the Code of Hammurabi's goat-stealing regulations at §8, p. 13 (R. Harper Ed. 1904).

Punitive damages are most familiar in tort.  See <u>Day v. Woodworth</u>, 54 U.S. (13 How) 363, 371, 14 L. Ed. 181 (1851).  "It is a well established principle of the common law that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant..."  Punitive damages are also recoverable when the conduct constituting the breach is also a tort.  See Restatement (Second) of Contracts § 355.3.

66

These damages are "aimed not at compensation but principally at retribution and deterring harmful conduct." Exxon Shipping Co., 554 U.S. at 492. Consequently, they are "awarded in addition to actual damages when the defendants acted with recklessness, malice or deceipt." Black's Law Dictionary at 448 (9th Ed. 2009) See also Day, 54 U.S. (13 How) at 371.

Plaintiff asserts that the Defendants criminal conduct toward their banking clients meets the test that a substantive due process violation "shock the conscience" and "offend the sense of fair-play and decency." As such Defendants are liable for punitive damages. See Marsh v. Cnty. of San Diego, 680 F. 3d 1148, 1154 (9th Cir. 2012)

Plaintiff asserts that Defendants refusing to produce documents, or destorying documents, that are vital to show a wrong had been committed is neither fair, nor decent. Defendants actions were taken with deliberate indifference toward Plaintiff's constitutional amendment rights. See Nunez v. City of Los Angeles 147 F. 3d 867, 871 (9th Cir. 1988); and County of Sacramento v. Lewis, 523 U.S. 833 at 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043; Rochin v. California, 342 U.S. 165, 172-73, 72 S. Ct. 205, 96 L. Ed. 183 (1952); and Pittsley v. Warish, 927 F. 2d 3 (1st Cir. 1991).

Defendants deprived Plaintiff rights that are deeply rooted in United states history and tradtion. Defendants denied Plaintiff his right to the documents bearing his property, his original blue-ink signature, and that would conclusively answer the

67

question as to the validity of the contract.

Plaintiff has both substantive and procedural rights that have been violated.  Defendants had a duty as bankers of honesty and of proper oversight and record keeping.  Had the bank execut-ives exercised proper diligence and care the documents in quest-ion would be accounted for and brought forth into evidence.  This deceipt and continued obfuscation constitutes an unjust "taking" on many levels and Defendants must be punitively held to account and prejudicially and vindictively stripped of all of their worldly wealth as they allowed the Plaintiff to be.  See Washington v. Glucksberg, 521 U.S. 702, 720-21,  117 S. Ct. 2258, 117 S. Ct. 2302,  138 L. Ed. 2d 772 (1997); and Brewster v. Bd. of Education of Lynwood Unified Sch. Dist., 149 F. 3d 971, 982 (9th Cir. 1998).

### XXI.   TORTIOUS INTERFERENCE WITH A CONTRACT
### AND/OR BUSINESS RELATIONSHIP

Defendant's failure to perform as agreed in funding Plain-tiff's credit line, Defendant's continued assurances that compl-ete funding was imminent, and Defendants instructive advice that Plaintiff should not divest real property assets led Plaintiff to make actions, and in some cases inactions, which ultimately led to Plaintiff's financial ruin.

Plaintiff spent available cash resources in a manner he otherwise would not have based on Defendant's assurances and Plaintiff turned down the sale of a large 300 acre property based on that same advice.  Plaintiff eventually lost approximately

$47,172,320.00 in equity in his gemstone assets and approximately $2,500,000.00 in equity in real property. Plaintiff also suffered damaged relationships with many of his business associates and a loss of reputation and credit that took decades to build. Plaintiff also suffered the loss of his option to purchase the remaining twenty barrels of emerald assets.

To satisfy a claim of Tortious Interference a plaintiff must show: (1) the existance of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. See Pacific NW Shooting Park Ass'n. v. city of Sequim, 158 Wn. 2d 342, 351, 144 P. 3d 276 (Wash. 2006); (quoting to Leingang v. Pierce County Med. Bureau, Inc., 131 Wn. 2d 133, 157, 930 P. 2d 288 (1997); and CRST Van Expidited, Inc. v. Werner Enterprises, Inc., 479 F. 3d 1099, 1105 (9th cir. 2007).

All Defendants can be held liable for any actions and assurances of any individual agent or employee of NWCB. NWCB's agents acted improperly and did so in the name of the institution. See Bernstein v. Aetna Life Ins. Co., 843 F. 2d 359, 367 (9th Cir. 1988). Intentionally interfering with an existing contract is a wrong in and of itself. Defendants purposefully malfeasant advice and assurances of funding not only harmed Plaintiff's existing contracts but irreparably damaged his business relat-

69

ionships with the sellers of the gemstones, the neighboring

timber companies to his 300 acre parcel, his creditors and ulti-

mately his family as Plaintiff was unable to meet his financial

and contractual obligations.

Plaintiff had existing contracts and relationships and the

existance of these economic relationships carrying a probability

of future economic benefit and/or loss of equity at the time,

raises a triable issue of fact and makes Defendants liable for

restitution and damages.  See Hilderman v. Enea TekSci, Inc.,

551 F. Supp. 2d 1183, 1197 (9th Cir. 2008).

XXII.   UNFAIR OR DECEPTIVE TRADE PRACTICES

VIOLATION OF THE FEDERAL TRADE COMMISSION ACT 15 USC § 45(a)(1)

Fraud, especially criminal fraud and maliciously and gross-

ly negligent misrepresentation, is a prohibited practice in every

industry and Plaintiff alleges that Defendants have engaged in

banking practices that were unsafe and unsound and that consti-

tuted Unfair and/or Deceptive Trade Practices.

Plaintiff relied on Defendants statements and inducements

and Defendants material misrepresentations and/or omissions

caused Plaintiff grevious economic harm.  Plaintiff's injury

stemmed directly from Defendant's illegal and unethical actions.

See Bank of America, N.A. v. Jill P. Mitchell Living Trust, 822

F. Supp. 2d 505, 534-35 (D. MD 2011).

Obviously in the instant case the Defendants omitted the

fact that either they had no intention to complete the funding

of the credit line contract or that they were committing fraud

for their own purposes.

Defendants evidenced bad faith in all aspects of their business.  See <u>Smith v. Safeco Ins. Co.</u>, 150 Wn. 2d 478,  78 P. 3d 1274, 1277 (Wash. 2003).

Financial institutions typically owe a heightened duty to give equal consideration to the clients interests and its own interests.  See <u>Liberty Int'l Underwriters v. Carlson</u>, Lexis 14045 (W.D. Wash. 2006) (citing <u>Am. States Ins. Co. v. Symes of Silverdale, Inc.</u>, 150 Wn. 2d 462,  78 P. 3d 1266, 1270 (Wash. 2003).  The burden of bad faith in this case has been established by the criminal conviction of Defendant Goodell and his admissions in court.

In section 3.3 of the Consent Order in Goodell's case it states:  "Respondent admits that sufficient evidence exists to sustain subparagraphs 3.1.3, and 3.1.6 of the statement of Charges, and for entry of this Consent Order, because while employed at NWCB he committed acts and omissions that were unsafe and unsound, incompetent, and grossly negligent, caused the bank to suffer substantial financial loss and other damage, and seriously prejudiced the interests of bank depositors;"

Defendants all bear responsibility for Goodell's actions and financial liability for the harms caused to Plaintiff.  See <u>Zander v. N.H. Indem., Co.</u>, Lexis 52208 (W.D. Wash. 2006).

Claims of bad faith and deceptive practices are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty. All are present here.

71

Washington courts presume harm has occurred if a plaintiff can prove breach. Defendants induced the contract and then breached that contract without cause or notice and are accordingly liable for restitution and damages. Their actions caused the proximate harms. See Dees v. Allstate Ins. Co., 933 F. Supp. 2d 1299, 1312 (W.D. Wash 2013).

Plaintiff is entitled to recover from Defendants for the harms caused by the wrongful withholding of the beneficial use of his credit line contract. See Tavakoli v. Allstate Property & Casualty Ins. Co., Lexis 181322 (W.D. Wash. 2012).

Defendants collective actions were misleading, contained the capacity, tendancy and effect of deceiving the banking clientele of NWCB and were rife with fraud and/or omissions. Defendants deceptive practices lacked basic business ethics, any supervisory oversight and harmed many of the individuals and businesses that placed their trust in NWCB and its officials.

NWCB was a Washington corporation and historically Washington has had a strong interest in promoting a fair and honest business environment in the state, and in preventing its corporations from engaging in unfair or deceptive trade practices in Washington or elsewhere. Defendants violated not only the trust of their clients but of the State as well. See Keithly v. Intellius, Lexis 79733 (W.D. Wash. 2011).

//

//

//

72

## XXIII. WRONGFUL WITHHOLDING OF FUNDS

Plaintiff avers that the Defendant's issuance of the cashier's checks evidences the concrete nature of the credit line transaction and that Defendant's refusal to further fund the credit line as agreed constituted a wrongful withholding of funds and breach of the contract which caused Plaintiff irreparable harm.

Plaintiff suffered actual economic loss as a result of the bank's wrongful withholding of funds. Plaintiff was unable to meet creditor or lease obligations, unable to execute on pending business transactions and unable to adequately protect his business interests due to an extreme lack of liquidity caused by the malicious machinations of the collective Defendants. See Valley Air conditioning & Repair Inc. v. Benefit Life Ins. Co., Lexis 7011 (E.D. Cal. 2007); and McDowell v. Union Mut. Life Ins. Co., 404 F. Supp. 136, 146 (C.D. Cal. 1975).

Wrongful withholding of funds can also be actionable as conversion where (1) a plaintiff owns or has a right to possession of tangible personal property (in this case $47 million in emeralds and real-estate); (2) a defendant wrongfully exercises control over the property (which the Defendants did through misrepresentations and inducements as to how Plaintiff's business decisions should be made); and (3) the plaintiff incurrs damage as a result (which happened by way of equity loss and foreclosure) See Moore v. Regents of Univ. of Cal., 51 Cal 3d 120, 137, 271 Cal Rptr. 146, 793 P. 2d 479 (1990); Edwards v. Jenkins, 214

73

Cal 713, 720, 7 P. 2d 702 (1932); <u>Poggi v. Scott</u>, 167 Cal 372, 375, 139 P. 815 (1914).

Plaintiff asserts that Defendant's wrongful withholding of funds was willful and malfeasant. See <u>Schilling v. Radio Holdings, Inc.</u>, 136 Wn. 2d 152, 159, 961 P. 2d 371 (Wash. 1998).

Washington courts have recognized that where no bona fide dispute exists any dispute is on the Defendants to prove which was not done in this case. See <u>WA St. Nurses Ass'n v. Sacred Heart Med. Ctr.</u>, 175 Wn. 2d 822, 834, 287 P. 3d 516 (Wash. 2012).

Defendants silently refused to fund the Plaintiff's credit line after consummating the transaction with the first two cashier's checks. No mention of any dispute was ever made known to Plaintiff by Defendants and accordingly Defendants are guilty of the wrongful withholding of funds which led to the collapse of Plaintiff's business and severe economic loss.

RELIEF, RESTITUTION AND DAMAGES REQUESTED

(1) Plaintiff requests actual and compensatory damages and restitution for the loss of equity sustained as a result of the Defendant's fraud in the amount of $47,172,320.00 for the gemstone assets, $2,500,000.00 for the loss of real-estate equity, and $650,000.00 in debt acquired as a result of Defendant's failure to honor the contractual obligation to Plaintiff.

(2) Consequential and proximate damages and restitution for the damage caused to the Plaintiff's business relationships in the amount of the appraised value of the gemstone assets

that were denied to Plaintiff as a result of the Defendant's fraud and tortious interference with Plaintiff's relation-ships in the amount of $255,138,750.00.

(3) General, irreparable, and consequential damages to Plain-tiff's loss of reputation, damage to credit and inability to cure financial obligations that ultimately led to Plain-tiff's emotional distress and current incarceration in the amount of $4,966,333.21.

(4) Punitive and substantial damages for the criminally fraud-ulent actions and callous disregard of the Defendant's that caused the harms to Plaintiff and Plaintiff's business int-erests in the amount of $22,000,000.00.

(5) Actual and compensatory damages for the conversion of the Plaintiff's personal and intellectual property in the neg-otiable instruments and chattel paper of the face value of $8,716,200.00.

(6) Treble damages on all requested amounts as allowed by civil RICO pursuant to 18 U.S.C.S. § 1964(c).

CONCLUSION

The fraudulent actors and malfeasantly and negligently deficient management of NWCB allowed many of the bank's customers to be taken advantage of by embezzelment, misrepresentation, and outright fraud by those entrusted with the lifesblood of their clients individual economies; their most valuable business res-ources, their money and their trust in their financial institut-ion.

1    As with many banking scandals the youngest and least senior

2  member of the corrupt institutional enterprise was sacrificed to

3  the federal penal system as a scape-goat while the senior men,

4  men  responsible for piloting the proverbial ship, ran it aground

5  and helped to plunder the wreckage with apparent immunity.  All

6  should be held accountable for the frauds committed on their

7  watch.

8    Plaintiff relied on NWCB, and justifiably so, as NWCB was

9  Plaintiff's primary banking relationship.  Plaintiff was one of

10  many of NWCB's victims and suffered grevious and irreparable harm

11  at the hands of NWCB and its employees and officers.  Heritage

12  Financial Corporation a.k.a., Heritage Bank, as successor to

13  NWCB now bears the financial responsibility for the grossly

14  negligent frauds and multiple misrepresentations committed at

15  NWCB and must be held jointly and severally liable for the harms

16  caused to Plaintiff.  Plaintiff is entitled to both restitution

17  and damages against all parties  involved herein.

RULE 8 COMPLIANCE

18    Federal R. Civ. P. Rule 8 requires that a plaintiff (1)

19  set forth the grounds upon which the courts jurisdiction rests,

20  (2) set forth a plain statement of the claim showing entitlement

21  to relief; and (3) set forth a demand for the relief plaintiff

22  seeks.  Rule 8 requires "sufficient allegations to put defendants

23  fairly on notice of the claims against them."  See McKeever v.

24  Block, 932 F. 2d 795, 798 (9th Cir. 1991; and Swierkiewicz v.

25  Sorema, 534 U.S. 506, 122 S. Ct. 922, 152 L. Ed. 2d 1 (2002).

76

Plaintiff has a number of causes of action but has kept each one short and on point and addressed only the relevant facts and case law arguments.  The claim is succinctly stated, the Plaintiff's claim to entitled relief is made evident throughout, and the relief requested is clearly stated.  Plaintiff is in compliance with Rule 8.

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury of the laws of the United States and all applicable Federal Rules and statutes that the foregoing detailed facts, allegations and exhibits are true, correct and accurate to the best of my knowledge.

Signed this _11th_ day of ___July___, 2016.

_____

Emiel A. Kandi, Plaintiff, Pro se

77